OPINION OF THE COURT
Jones, J.
We hold that there is neither constitutional nor statutory bar to submission to arbitration by an employee of his claim against his employer for first-party benefits under the no-fault insurance law with respect to injuries suffered by the employee in the course of his employment while operating a motor vehicle owned by the employer.
On December 1, 1975 respondent Maiorano, an employee of Ryder Truck Lines, Inc., while operating a Ryder motor vehicle in the course of his employment was injured in a one-vehicle accident. Ryder, a self-insurer as to its obligations under the Workmen’s Compensation Law, commenced payment of workmen’s compensation benefits to its employee. Maiorano, however, also requested payment from Ryder, in its capacity as owner of the motor vehicle, of first-party benefits under article 18 of the Insurance Law (the so-called "no-fault” law), as to which liability Ryder was also a self-insurer. When the employer refused to pay first-party benefits, the employee sought arbitration of his claim therefor, pursuant to the provisions of section 675 of the Insurance Law. The employer then instituted the present proceedings to stay such arbitration. Supreme Court denied the stay and directed the parties to proceed to arbitration, the Appellate Division affirmed, and the employer has appealed to our court as of right on constitutional grounds. We now affirm the dispositions below.
 A preliminary procedural issue calls for our attention. Respondent employee would have us sustain the denial of the stay of arbitration on the ground that consideration of the merits of the controversy between the parties, in accordance with recognized doctrine, is not subject to judicial resolution but must be left to determination by the arbitrator. The disposition of this contention hinges on the scope of the parties’ obligation to arbitrate. The employee correctly states the law — if the parties be deemed to have agreed to refer their dispute to arbitration, then, unless barred by considerations of public policy, disposition of their differences on the merits must be left to the arbitrator (CPLR 7501). The commitment to arbitrate in this instance is to be found in the statute *369 rather than in any writing signed by the parties. Subdivision 2 of section 675 of the Insurance Law contains the relevant provision — "Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer’s liability to pay first party benefits * * * to binding arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.” In our view this is a broad arbitration clause embracing all disputes with respect to entitlement to first-party benefits arising under the statute.
The employer counters, however, with the argument that there is nothing to submit to arbitration inasmuch as the employee has no claim whatsoever against his employer under the no-fault statute. The present controversy therefore is as to the scope of the agreement to arbitrate, not as to the merits of this employee’s particular asserted entitlement to first-party benefits. We turn then to consideration of the employer’s arguments.
Ryder’s principal contention is that, pursuant to the provisions of section 18 of article I of the New York State Constitution, the exclusive remedy of an employee for injuries arising out of the operation of his employer’s motor vehicle in the course of his employment is under the Workmen’s Compensation Law. As a corollary the employer argues that to interpret section 671 of the Insurance Law as extending first-party benefits to employees would be to violate the constitutional proscription. By way of a fallback position, the employer argues that even if liability for first-party benefits is not barred by the Constitution, it nevertheless is foreclosed by the explicit provision of section 11 of the Workmen’s Compensation Law. We reject these contentions, as have the courts below, and conclude that the entitlement of the employee to first-party no-fault benefits is to be determined in arbitration.
Section 18 of article I of the Constitution, as originally adopted in 1913 and renumbered November 8, 1938, effective January 1, 1939, provides: "Nothing contained in this constitution shall be construed to limit the power of the legislature to enact laws for the protection of the lives, health, or safety of employees; or for the payment, either by employers, or by employers and employees or otherwise, either directly or through a state or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof, except where the injury is occasioned by the *370 wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty; or for the adjustment, determination and settlement, with or without trial by jury, of issues which may arise under such legislation; or to provide that the right of such compensation, and the remedy therefor shall be exclusive of all other rights and remedies for injuries to employees or for death resulting from such injuries; or to provide that the amount of such compensation for death shall not exceed a fixed or determinable sum; provided that all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer.” Manifestly this provision is one of enabling authorization rather than of adoption of a workmen’s compensation program. Section 18 does not itself enact any such program as an exclusive employee remedy; it merely removes all constitutional constraints on the enactment of such a program by the Legislature. Accordingly the Constitution cannot be construed as prohibiting the adoption of the present or any other legislative provision.
The issue then is whether the Legislature, notwithstanding its earlier adoption of the Workmen’s Compensation Law with its explicit exclusive remedy provision,[1] created another remedy in favor of employees, separate and distinct from and in addition to workmen’s compensation, when it enacted article 18 of the Insurance Law in 1973.[2] We find nothing in the *371 no-fault insurance law itself, or in the legislative circumstances surrounding its adoption, which suggests that with the general replacement of former tort liability by first-party benefits (to the extent of basic economic loss as defined by the new statute) it was intended that the benefits of the new program should not be available to employees injured in the course of their employment. Indeed it is argued that the implications of the no-fault law are to the contrary; basic economic loss is expressly defined to exclude (and thus to be in addition to) workmen’s compensation benefits (Insurance Law, § 671, subd 2, par [b]).
Two different factual employer-employee situations must be examined: in the first a third-party tort-feasor is involved; in the second, as here, there is no third-party tort-feasor. In the former situation, with the substitution under the no-fault law of first-party benefits for former tort liability, the employer as owner of the motor vehicle being operated by the employee would become liable for payment of the substituted first-party benefits. It defies credulity to think that the Legislature did not expect this new, substituted right to survive the restriction of section 11 of the Workmen’s Compensation Law purporting to limit all liability of the employer to workmen’s compensation benefits. To hold otherwise would in effect have been to deprive the employee of his former right to recover from the third-party in tort and to provide no substitute protection. Nothing suggests that any such deprivation was intended or foreseen. Indeed appellant does not seriously argue for such a result where a third-party tort-feasor is involved.
Appellant does argue, however, that the second situation— that with which we are here confronted — is quite different. In the one-vehicle accident in which there was no third-party tort-feasor, prior to the enactment of the no-fault law the employee had only a claim against his employer under the Workmen’s Compensation Law, subject to all the restrictions and limitations of that law. Thus, it is said that to accord an employee the right to first-party benefits from his employer in a one-vehicle accident in which no third-party tort-feasor is involved would be to create a new benefit for which there had been no prior analogue, in direct contravention of the provisions of section 11 of the Workmen’s Compensation Law.
This argument has an analytical plausibility and accurately describes, in a literal sense, the consequence of the determina *372 tions below, viewed in the narrow perspective of this particular case. We reject it, however. It is based on a differentiation between discrete factual situations for which we find no predicate in legislative enactment or consideration. Nothing suggests that the legislators consciously addressed the employer-employee relationship, much less perceived or sought to provide for a different consequence under the no-fault law depending on whether a third-party tort-feasor was a participant in the events out of which the employee’s claim arose. We judge the adoption of article 18 of the Insurance Law to have been intended to effect a major modification of former liability for negligence. It worked, pro tanto, a replacement of the former system of liability based on fault by a new no-fault liability. In the broad substitution of one system for another, we do not find evidence of legislative intention to effect a refined integration of the new no-fault program with the existing workmen’s compensation program. (Cf., e.g., Matter of Granger v Urda, 44 NY2d 91.) Rather the evidence is that both programs are self-standing, with no consciously intended harmonization between them. It may well be that the Legislature will now wish to or should consider integration of the two programs; it suffices for the disposition of the present appeal to conclude that it has not yet done so. Thus, the benefits under each program are at present independently available, except as expressly otherwise provided in section 671 (subd 2, par [b]) of the Insurance Law.
The employer contends that the determinations below result in differentiation of treatment between employees injured in the course of their employment in motor vehicle accidents and those injured from other causes, and thus constitute a denial of equal protection of the laws. We find no merit in this contention (cf. Montgomery v Daniels, 38 NY2d 41, 59-66).
With respect to the availability to employees of claims to first-party benefits under the no-fault law we attach no legal significance to whether the employer is self-insured or carries insurance coverage. In both instances, the no-fault law places financial responsibility on the employer. The employer, subject to some constraints, may then choose one method or the other to make economic provision to assure discharge of its financial obligations. Its liability, however, is unaffected by the implementing mechanism it selects.
We hold that there is nothing in Constitution or statute *373 mandating exclusion of employee claims against employers for first-party benefits under article 18 of the Insurance Law and therefore conclude that the present controversy between the parties falls within the scope of the applicable arbitration provision. We see no bar to the determination in that forum of this employee’s claim to entitlement to first-party benefits from his employer.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. Section 11 of the Workmen’s Compensation Law provides in pertinent part: "The liability of an employer [for workmen’s compensation benefits] shall be exclusive and in place of any other liability whatsoever, to such employee * * * at common law or otherwise on account of such injury”.

. Although there are recognizable similarities, we are not here confronted with "skew-line” statutes (cf. Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 88). It is true that benefits are available under the earlier Workmen’s Compensation Law which are separate and distinct from and do not parallel or intersect with the benefits under the later no-fault insurance law. There was no provision of the Disability Benefits Law, however, which purported expressly to limit benefits available to those under the Disability Benefits Law: "it contained no prohibition against granting disability benefits in excess of those mandated by the DBL” (op. cit., p 87). By contrast, section 11 of the Workmen’s Compensation Law provides that liability thereunder shall be exclusive of all other liability whatsoever to the employee. Thus, while benefits do not collide, the subsequent extension of no-fault benefits may be said to collide with the restrictive provision of section 11 of the Workmen’s Compensation Law.